**Billy GILLEY, Petitioner–Appellee,**

v.

**M. MORROW, Respondent–Appellant.**

**No. 05–36201.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 7, 2007.

Filed Aug. 31, 2007.

As Amended Oct. 31, 2007.

Dennis N. Balske, Esq., Steven T. Wax, Federal Public Defender's Office, Portland, OR, for Petitioner–Appellee.

Carolyn Alexander, Esq., Office of the Oregon Attorney General, Salem, OR, for Respondent–Appellant.

Before: GOULD, PAEZ, and RAWLINSON, Circuit Judges.

MEMORANDUM *

Respondent–Appellant, Mitch Morrow, appeals the district court's judgment conditionally granting Billy Frank Gilley's petition for writ of habeas corpus under 28 U.S.C. § 2254 based on ineffective assistance of trial counsel during both the guilt and sentencing phases of his trial.[1] We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253.[2] We affirm the district court's decision granting Gilley's petition for writ of habeas corpus based on ineffective assistance of trial counsel during the sentencing phase of his trial, and reverse the district court's decision granting Gilley's petition for writ of habeas corpus based on ineffective assistance of trial counsel during the guilt phase of his trial. We address each of the State's arguments below.

*1. Evidentiary Hearing*

At the outset, we hold that the district court did not abuse its discretion when it granted Gilley's request for an evidentiary hearing pursuant to 28 U.S.C. § 2254(e) based on the district court's finding that Gilley was diligent in his efforts to search for evidence during his state court proceedings. *See Williams v. Taylor,* 529 U.S. 420, 435, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000) (holding that in order to "limit the scope of federal intrusion into state criminal adjudications and to safeguard the States' interest in the integrity of their criminal and collateral proceedings," a petitioner may only receive an evidentiary hearing in federal court if he was diligent in his efforts to search for evidence and explaining that diligence "depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court. . . .").

*2. Guilt Phase*

With regard to Gilley's claims of ineffective assistance of counsel, Gilley is entitled to habeas relief under AEDPA only if the state court's denial of his claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d)(1)–(2). In order to prevail on a claim of ineffective assistance of counsel, a petitioner must

---

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

1. Because the parties are familiar with the facts and procedural history, we do not restate them here except as necessary to explain our disposition.

2. We review de novo the district court's decision to grant habeas corpus relief. *Fields v. Waddington,* 401 F.3d 1018, 1020 (9th Cir. 2005). Because Gilley filed his habeas peti-

tion after April 24, 1996, his petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Gill v. Ayers,* 342 F.3d 911, 917 (9th Cir. 2003). Whether the district court correctly interpreted the provisions of AEDPA is a question of law reviewed de novo. *Earp v. Ornoski,* 431 F.3d 1158, 1166 (9th Cir.2005). We review the district court's factual findings for clear error. *Id.*

demonstrate (1) that his trial counsel's performance "fell below an objective standard of reasonableness ... under prevailing professional norms" and (2) that petitioner was prejudiced by counsel's unprofessional conduct because "there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052. There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689, 104 S.Ct. 2052. Thus, the inquiry under *Strickland* is highly deferential; "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Bell v. Cone*, 535 U.S. 685, 698, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052).

Morrow argues that the district court committed four separate errors when it concluded that various defenses were available to Gilley at the time of trial which counsel failed to pursue.

■ We agree with the state that Gilley was not entitled as a matter of state law to the affirmative defense of extreme emotional disturbance ("EED") because he was charged with three counts of aggravated murder under Or.Rev.Stat. § 163.095(1)(d). Under Oregon law, EED is only a defense to intentional murder, not aggravated murder. *See, e.g., State v. Hessel*, 117 Or.App. 113, 117–18, 844 P.2d 209 (1992), *abrogated on other grounds by State v. Barrett*, 331 Or. 27, 10 P.3d 901 (2000) (rejecting defendant's argument that EED was a defense, not only to intentional murder, but also to aggravated murder, and noting that as far back as 1981, when EED was made a defense to intentional murder, the court had held that such a defense was applicable only to intentional murder); *State v. Reams*, 47 Or.App. 907, 913, 616 P.2d 498 (1980), *aff'd*, 292 Or. 1, 636 P.2d 913 (1981); *see also State v. Moore*, 324 Or. 396, 412, 927 P.2d 1073 (1996) ("According to [the statute's] text, EED is an affirmative defense *only* to the crime of murder, *as that crime is defined by ORS 163.115(1)(a)*, that is, criminal homicide committed intentionally.... Consequently, EED is not an affirmative defense to aggravated murder under ORS 163.095(1)(d)."); *State v. Wille*, 317 Or. 487, 492, 858 P.2d 128 (1993). Because Gilley was not entitled as a matter of Oregon state law to the affirmative defense of extreme emotional disturbance, trial counsel was not objectively unreasonable in not presenting that defense, and Gilley was not prejudiced thereby. *See Baumann v. United States*, 692 F.2d 565, 572 (9th Cir.1982) ("Failure to raise a meritless legal argument does not constitute ineffective assistance of counsel.").

■ With regard to trial counsel's alleged failure to raise the defenses of self-defense or defense of others, we conclude that these defenses were also unavailable as a matter of state law based on the facts of this case. There is no dispute that both of Gilley's parents were sleeping at the time he repeatedly struck them with a baseball bat. There was no imminent threat of harm to either Gilley or his sister Jody, as required by Or.Rev.Stat. § 161.219(3) and well-settled Oregon case law, even if we assume his story about his parents' abuse is true. *See, e.g., State v. Haro*, 117 Or.App. 147, 149–50, 843 P.2d 966 (1992) (explaining the limitations on the use of deadly force in self-defense or

defense of others, namely the so-called "necessity" requirement); *see also State v. Charles,* 54 Or.App. 272, 279, 634 P.2d 814 (1981), *aff'd,* 293 Or. 273, 647 P.2d 897 (1982), *abrogated on other grounds by State v. Sandoval,* 342 Or. 506, 156 P.3d 60 (2007). We hold that trial counsel's decision not to pursue either self-defense or the defense of others was reasonable and Gilley was not prejudiced by trial counsel's decision to do so.

■ To the extent that the district court concluded that trial counsel rendered ineffective assistance by failing adequately to pursue a mental defense, such as lack of intent with regard to the murder of Gilley's sister Becky, and that there is a reasonable probability that such a defense would have resulted in a manslaughter verdict, we disagree. Under Oregon law, a person acts with "intent" if the person "acts with a conscious objective to cause the result or to engage in the conduct so described." Or.Rev.Stat. § 161.085(7). A person acts "recklessly" if the person "is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists." Or.Rev.Stat. § 161.085(9). For a defendant asserting a defense of lack of intent to the charge of aggravated murder to obtain a lesser-included manslaughter verdict, he must prove that he only acted recklessly, rather than intentionally. *See generally State v. Skelton,* 153 Or.App. 580, 584 n. 2, 957 P.2d 585 (1998) (explaining operation of mental states). The record contains ample evidence demonstrating deliberate conduct, including that Becky screamed and tried to run away when she saw Gilley attacking their father, and that Gilley then pursued her and hit her in the head with "one or more blows" with the baseball bat. We conclude that counsel did not render ineffective assistance by not adequately pursuing a de-

fense of lack of intent regarding Becky Gilley's murder because it is not reasonably likely that the jury would have found that Gilley possessed the requisite intent under Oregon law and that Gilley was not prejudiced by any such failure.

■ Finally, we reject the district court's determination that trial counsel unreasonably failed to present an insanity defense, and that Gilley was prejudiced by this failure. Under Oregon law, Gilley would have had available the defense of guilty except for insanity if he could show that he suffered from a "mental disease or defect" that caused him to lack substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. *See* Or.Rev. Stat. § 161.295. Even considering the new evidence presented by Dr. Stanulis at the federal evidentiary hearing—the results of neurological testing that revealed Gilley suffered from some level of post traumatic stress disorder and organic brain syndrome—Gilley has not presented clear and convincing proof to rebut the state court's factual finding that "he was [not] suffering from a medical condition *at the time of the homicides"* that was severe enough to have prevented him from appreciating the criminality of his conduct. (emphasis added.) *See Lambert v. Blodgett,* 393 F.3d 943, 978 (9th Cir.2004)(holding that "[f]act-based challenges founded on evidence raised for the first time in federal court are reviewed under [28 U.S.C.] § 2254(e)(1); the question on review is whether the new evidence amounts to clear and convincing proof sufficient to overcome the presumption of correctness given the state court's factual finding.")

We therefore conclude that the district court erred when it granted Gilley's petition for writ of habeas corpus based on ineffective assistance of counsel during Gilley's trial.

### 3. Penalty Phase

Morrow also challenges the district court's determination that the evidence submitted by petitioner in the federal evidentiary hearing rebutted the factual determinations made by the post-conviction court with clear and convincing evidence, and, consequently, "the state court's factual findings on the incomplete evidence should not receive deference." Specifically, the state argues that "[b]ecause the district court relied upon exactly the same evidence relied upon by the post-conviction court, the district court erred" in reaching its conclusion.

The state PCR court considered Gilley's argument that "the concept of parricide and the fact that allegedly he was an abused child should have ... been brought before the ... court on sentencing." The court rejected the claim, finding that Gilley "failed to meet his burden of proof ... to demonstrate that mitigating evidence existed which would more probably than not persuaded the trial court to impose concurrent sentences upon him rather than consecutive sentences," and that Gilley's affidavits concerning his family history were "hind sight" [sic]. The district court, however—after discussing the new evidence introduced during the federal evidentiary hearing which provided "independent substantiation of the severe mental and physical abuse Petitioner suffered at the hands of his parents, as well as Dr. Stanulis' diagnosis that Petitioner suffered from [post traumatic stress disorder] and a severe organic brain dysfunction at the time

of the killing"—concluded that Gilley was prejudiced by trial counsel's failures "both before the jury at trial and before the court at sentencing." With regard to trial counsel's failure at sentencing, the district court explained that the "trial court's conclusion at sentencing speaks volumes [with regard to prejudice.]" [3] The district court found that "[c]ompetent defense counsel would have presented mitigation evidence at the sentencing, including Dr. Stanulis' explanation that studies show there is virtually no risk of recidivism in parricide cases." We agree.

Contrary to the state's argument on appeal, the district court relied on the new evidence presented for the first time during the federal proceeding when it formulated its factual and legal conclusions. Indeed, the district court repeatedly contrasted the powerful new evidence obtained during the course of the evidentiary hearing and other proceedings with that evidence, or lack thereof, presented at Gilley's sentencing and during his state PCR proceedings. Based on the record before us, we conclude that the new evidence before the district court "amounts to clear and convincing proof sufficient to overcome the presumption of correctness given the state court's factual findings." See Lambert, 393 F.3d at 978. We hold that trial counsel rendered ineffective assistance of counsel during the sentencing portion of Gilley's trial when he failed to present any mitigating evidence at sentencing; and we affirm the district court's

---

**3.** At sentencing the trial court stated:

I have heard not one scrap of evidence to mitigate what you did. What occurred was not done in the heat of passion. It was cold blooded ... And to this day I have yet to hear a satisfactory explanation or reason for the conduct .... and frankly, you've put me in a position where I am sentencing you from a lack of information ....

The only conclusion I can reach is a very severe personality disorder, antisocial personality. With the type of acting out you did in this case, the best I can do for society is try to put you away for as long a period of time as the laws will allow, and I see no choice.

grant of habeas relief with respect to Gilley's sentencing.

**AFFIRMED IN PART AND REVERSED IN PART.**

RAWLINSON, Circuit Judge, concurring:

I concur in the result.